Mr. Hillis, may it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Lewis on this appeal. He raises two issues. The first is that we're challenging the denial of the motion to suppress evidence found in Mr. Lewis's car. That car was stopped by a trooper who said Mr. Lewis violated the three-second rule. Illinois law, though, does not have a three-second rule. The Illinois Secretary of State recommends keeping a three-second stopping distance, but that is only a recommendation. What we need to look to is the statute, but the trooper didn't do that. The trooper testified that he saw a three-second violation. What the statute required was that there be proof that the driver, that the officer observed the driver follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, in the condition of the highway. There's exactly no evidence of any of those things that was offered by the government. The trooper's testimony was based on recommendations, but that doesn't get you where you need to be. To establish probable cause, the trooper had to detail what his observations were to support the elements that would support the statute that he based his stop on. It just never happened. That should be the end of this case, in our opinion. And as much as the government says, well, the trooper later observed an additional three-second violation, same problem, same result. If the law doesn't have a three-second rule, a member of the executive branch, which the Secretary of State is, cannot then define what the statute requires and write in something that the legislature did not put there. So, again, whether you're looking at what they say was the original reason for being pulled over or what they say is an ongoing violation, neither thing passes muster under what the statute requires here. Well, the whole key to this case is the stop, I presume. Yes, it is. Yeah. I mean, once the stop is, there's too many things to perk up that diminish opportunity. So I can understand that. But his first observation was driving too close to the truck, I think. Yes. But also this other thing about holding on and stuff like that. I've never been an arresting officer and why people stop. And, you know, he's done thousands of stops. And, okay, that seems kind of weird. But, you know, there's a crowd of cars going along, and somebody gets pulled over. He stops to see if another officer needs help, and then he speeds up and going back and forth. Oh, true. This is weird. But he does eventually make the stop. He does. And that's where I think your strength is, is he's had no way he should have made a stop. That's right. So he can only stop if there's probable cause. There's only probable cause if the driver violated the statute. The officer would have to articulate his observations showing how the violation occurred. That didn't happen. Instead, the officer resorted to a three second rule published by the Illinois Secretary of State, as opposed to testifying in accordance with what the statute requires, the duly enacted statute from the Illinois legislature. So it's really that simple. But Judge Manion, to the point about holding the steering wheel, if you hold it the 10-2 position, the way that they teach you in driver's ed, do you think that's not a reason to stop you? And furthermore, aren't these similar things to what the Supreme Court recently heard in Byrd? And they expressed some concern about you're responsible for doing things that they are supposed to do and are commonly done. So I don't think that that should have tingled his spidey sense or whatever it is. That's an important point. I shouldn't use that to diminish. Officers have training and experience. But this officer didn't testify about what his training and experience was, such that you can then look to say, well, based on that, these observations and inclinations are something that warrants additional action. It was sort of the third reason the district court came up with, wasn't it? Whatever it was, there were incremental encounters, I guess. And there was a third one that gets into this 1.6 or whatever it is. Well, the district court found that the following too close was established by the timing that the officer detailed. But again, the district court fell into the same trap that the government did in its presentation of evidence, looking to what the Secretary of State requires as opposed to what the statute requires. So the district court got that wrong. It was led there by the government. And we want to draw back to what it is the probable cause requires. Three-second rule isn't it. You have to show what the statute, Tory language is, and how the officer observed violations that allowed him to establish probable cause under it. Well, also, I'm sort of curious, the officer's car was sitting in the middle looking for trouble, I guess you'd say. Right. And most drivers, and I'm not a long-distance driver much, the only time recently when my daughter was driving, I had more concerns about her than I did about who's watching. So I guess it's a question of what people's reactions are. If somebody sees the cop, you know, two or three hundred yards ahead sitting there, that's when you do different things about making sure you're on the line. And unfortunately, they were too close to the truck, I guess. True. But there's no evidence that that's when he started to do these things. The officer said when he came, I think he already had his hands in the 10-2 position, started to push back a little bit into what he called the B pillar. But those things are not unlawful either. If the officer wants to say based on training experience, pushing back into the B pillar is, you know, cause for alarm, he needs to explain why in his training and experience that is so. But that still doesn't give him probable cause. So that may be reasonable suspicion, but that's not probable cause. And I want to say this, if the government's position is accepted here, this is bad news for motorists everywhere. This is everybody on the Dan Ryan or on the Edens or on I-70. You are looking at bumper-to-bumper traffic all over the place, often. And if the officer's allowed to do this, it is open season. The police have carte blanche to stop every motorist all the time. Because the three-second rule would allow them to make every motorist subject to a stop. That just can't be so. If they want to stop, they have to say under the statute what the reasons are. But you're talking about the Dan Ryan. There's no way to get three seconds behind somebody. Right. At least the way I look at it when I'm on the train and I see it below me. And I'm thankful I'm not down there. Me too. I came up I-55, but I was on the train that ran parallel to it. And I looked at the window as I came up here. I saw a lot of three-second violations. Maybe we should have more stops on three-second violations. So when you talk about driver training at 10 and 2, you know, of course I'm much older than you, Mr. Hillis. But there was a time when they said you had to give a certain amount of space. Right. A car length for every 10 miles an hour, I think, was the thing. That would be fine, Judge. I guess perhaps a trooper that wants to move toward that return of suggested space might not be ill-advised. Well, returning to norms that are based on evidence about driver safety is one thing. But you still have to go back to the statute. And I recognize this imperative of safety. But for there to be a valid stop, the imperative here is probable cause. Now, if I may, in the remaining time, just say that I suppose we've articulated our reasons about the unlawful detention of Rodriguez. All of these things the officer did, putting him in a car, asking him all sorts of questions. Not issuing the ticket at the 9-minute mark. Not issuing it at the 10-minute, 40-second mark. He waits until 1431 or 1425. Coincidentally, that's when the canine's outside the door. I think that's not exactly the way that this should have gone. Under Rodriguez, the mission of the traffic stop was completed. The officer should have allowed him to go. And it's bad that he put him in the car, too. Had him get in the car, because that effectuates an arrest. My client doesn't have his license and things that he needs to leave. Now he can't go, as the officer's delaying, prolonging. These are problems. And then furthermore, I'll stand on what we said in the brief about the reasons that the district court articulated for reasonable suspicion. We think they're lacking. Thank you. Thank you, Mr. Hillis. Mr. Grist? Thank you. May it please the court. My name is Adam Grist. I represent the United States. I want to start by correcting the length of this detention. It was not 14 minutes when Sgt. Sweeney handed over the ticket and concluded this stop. It was approximately 11 minutes. On the video, the stop isn't effectuated until about 3 1⁄2 minutes into the video. And it's approximately 13 1⁄2 minutes that he's explaining the ticket to him. You can hear it printing off on the video. But going back to the initial argument that my friend started with is that the three-second rule. There was evidence in the court below that the trooper relied on the Illinois Vehicle Code. That can be found on Defendant's Appendix pages 16 and 17. He was asked, and what is the purpose for you conducting this time and distance calculation? And the answer was to make sure that the vehicles are traveling at a safe distance behind other vehicles on the interstate. He goes on to say that the Illinois Vehicle Code has a reasonable and prudent standard and then says that the Secretary of State says that that's three seconds. If Trooper Sweeney were not allowed to use the Secretary of State's calculation or measurement or estimation, whatever you want to call it, which is akin to what this court has upheld previously with an Indiana situation, he would be faced to explain to the motorist, well, I stopped you because you weren't following at a reasonable and prudent distance given the conditions of the roadway. Well, the logical follow-up would be, what does that mean? How do I abide by that law? Now, in this case, he relied on that three seconds, but the silver dodge wasn't even close to the three seconds. The evidence at the trial court was clear that on this third instance, it was 1.2 seconds that Mr. Lewis followed that semi. Sergeant Sweeney testified that that was similar to the first observation that he made and that he only pulled out to follow to confirm with a concrete number. Both of those observations give rise to reasonable suspicion at a minimum, but certainly probable cause on top of that to effectuate the stop. Going on to one of the court's other questions as to the initial observation that he made, Sergeant Sweeney did rely on his training and experience in testifying in the court below. He noted that it was that change in posture when he first observed Mr. Lewis, the gripping the steering wheel, the pressing himself back. It was that change in posture that he said was inconsistent with the thousands of vehicles that they see a day on Interstate 55. He made that assessment and should be allowed to make that assessment based on his training and experience. Well, what's the change in posture? Because he changed his posture in reaction to seeing the police car? That is consistent with what the record was below, yes. But I wonder who doesn't? You know, if somebody's going a little bit too fast, that's when you might pull behind the semi or do some other things if you see a police car. Certainly. But it's important to note here that that's not why the officer pulled him over. The officer made the stop because of the IVC violation, Illinois Vehicle Code, excuse me, violation. That was just one of the factors. What did the court found? It was the third. Is that the third issue or whatever you want to call it? The third observation? The third traffic observation, yes, Your Honor. That is what the court relied on, that concrete number that Sergeant Sweeney pulled out to go calculate with 1.2 seconds. Yeah, okay. There was a question raised about the difference between this and the Dan Ryan. I think it's important to note through the video that the conditions of Interstate 55 southbound during this stop allowed for a greater following distance. Before Trooper Sweeney effectuated this stop, Mr. Lewis followed right behind this semi, tailgated this semi for approximately 50 seconds. And it's clear that there was enough room for him to back up. In fact, the cars following Mr. Lewis clearly observed at least twice the following distance as Mr. Lewis did. The detention itself was also reasonable. Mr. Lewis was lawfully seized at that point in time and there is nothing wrong in the case of support. There is nothing wrong with Sergeant Sweeney asking him back to his car for the purposes of that stop. The duration itself, again, Trooper Sweeney testified below that many of those questions back and forth that raised his concern occurred within the first minute. Also within that first minute, he testified that he was running his criminal history check and getting that return on his driver's license, warrant status, and criminal history. So in no way can the defendant say that that conversation measurably extended the duration of that stop. I would like to correct some of the things that the defendant said in the reply brief. In the reply brief, they asserted that the evidence was that Trooper Sweeney's emergency lights were on as he chased up to the Silver Dodge. That is not accurate. The record is clear at defendant's appendix page 19, 51, and 54. At page 19, Trooper Sweeney said he proceeded to the right lane behind Mr. Lewis and activated his emergency lights. He also said that when he previously pulled over to the side of the road to assist Sergeant Ent, it was his rear lights that he activated, not his emergency lights. That's confirmed on pages 51 and 54, where during cross-examination counsel asked him questions specifically about effectuating the stop and asked, is that when you activated your lights? And talked about his flashing lights overhead before he stopped. The question here, Your Honor, is not whether or not he violated the Illinois Vehicle Code, but whether the officer had reasonable grounds to believe he did. Based on this record, the district court correctly found that he did. If there are no other questions from Your Honors? Probably not. Thank you. Thank you. Mr. Hillis. At the nine minute and two second mark in the video, the police officer said he was pretty much done. The trooper said he was pretty much done. He repeated that he was all done at the 1040 mark. If my client is not in the trooper's car, made to do that, the time that it takes, asked all the questions that are unrelated to the mission to stop, my client's gone before that canine arrives. So they did unreasonably prolong the stop. There's just no other way about it. They might think that they can ask all these questions, but they can't. They're unrelated to the mission to stop. Rodriguez draws that bright line for us. But there's another problem. Where they say the officer was able to stop and tell the guy three seconds because he couldn't explain what the violation is otherwise. There again, importing from the Secretary of State as if that's a law. The officer must be able to articulate. And if he can't do it to the satisfaction of the driver, that's one thing. But he has to do it in court. And he never did. All he did was... Go ahead. All he did was mention about the three second rule again. There was a passing reference to the statute. We don't deny that. But we say, look at what the officer relied on to make the stop. It was the three second rule up and down. What about his suspicions before the stop, Mr. Ellis? Do you think there's any ground for suspicion? Well, I don't think that... If you're talking about the position of the hands and so forth, I think they're immaterial. That seating adjustment? You know, where he moved back? Oh, yeah. Right. Now, the pillar can mask the driver, right? It can. There's no testimony it did. But, Your Honor, can I draw something just for your thoughts on this? Yeah, sure. Reasonable suspicion may give him cause to observe him. But probable cause is what allows the officer to make the stop. No, I understand. I just ask you whether you saw any... Or seen no reasonable suspicion prior to where he believes he has probable cause. I understand the probable cause rests on the three seconds. Right. But I'm talking about a state trooper looking at a driver. I recognize those positions as well as you. Sure. I think perhaps they're more metropolitan than on the highway. But I don't know what a trooper's experience is in that. Maybe some people drive like that comfortable position, such as it is sort of a sofa position as opposed to upright. But, Your Honor, shouldn't the officer have explained what his training experience was to say, based on my 12,000 stops, when people do this, this many of them or the great majority of them or some significant fraction of them result in, you know, this additional action? Plus, I'll point out what Judge Mannion said because I think this was perceptive on this point. If you get that off, it makes perceptive. I'm glad to hear it because I think it helps, Argosy. If you tense, you grab the steering wheel. If you push back a little bit, if you look more alert and you're doing all the things that everybody does, look at what the Cortez case says, the government sites, about drawing common sense experiences about things. Everybody does this. How does that square up with reasonable suspicion? Where does that go in the metric of probable cause? Everybody does this. It cannot then be something that is atypical in cause for the officer to have basis for either reasonable suspicion or probable cause. That'd be our position, Your Honor. So we ask that you vacate the district court's decision and find that there was no probable cause to make the stop, suppress the evidence. Thank you. Thank you, Mr. Hellisman. The case is taken under advisement.